TRACY L. WILKISON
United States Attorney
CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division
DAVID T. RYAN (Cal. Bar No. 295785)
SOLOMON KIM (Cal. Bar No. 311466)
Assistant United States Attorneys
Terrorism and Export Crimes Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-4491/2450
     Facsimile: (213) 894-2979
     E-mail:    david.ryan@usdoj.gov
                solomon.kim@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 22-121-FMO |
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT SEAN SCHOEPFLIN'S MOTION FOR RECONSIDERATION OF DETENTION; DECLARATION OF SOLOMON KIM |
| v. | |
| SEAN SCHOEPFLIN<br>   aka "Sean Fitzgerald,"<br>   aka "Sean Schoepflin II," and<br>ERIKA LEON<br>   aka "Erika Fitzgerald," | |
| Defendants. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys David T. Ryan and Solomon Kim, hereby files its opposition to defendant SEAN SCHOEPFLIN's motion for reconsideration of detention.

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, the attached

exhibits and declaration, and such further evidence and argument as the Court may permit.

Dated: May 13, 2022　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　TRACY L. WILKISON
　　　　　　　　　　　　　　　　　　United States Attorney

　　　　　　　　　　　　　　　　　　CHRISTOPHER D. GRIGG
　　　　　　　　　　　　　　　　　　Assistant United States Attorney
　　　　　　　　　　　　　　　　　　Chief, National Security Division

　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　DAVID T. RYAN
　　　　　　　　　　　　　　　　　　SOLOMON KIM
　　　　　　　　　　　　　　　　　　Assistant United States Attorneys

　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　　　　UNITED STATES OF AMERICA

2

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES.................................4

I.   INTRODUCTION....................................................5

II.  STATEMENT OF FACTS..............................................6

III. ARGUMENT........................................................9

     A.   No New Finding Under 18 U.S.C. § 3142(f) Is Required
          For A Renewed Detention Hearing............................9

     B.   The Court May Detain On Danger Alone, But Does Not
          Have To Because Defendant Presents A Danger And Flight
          Risk......................................................13

IV.  CONCLUSION.....................................................16

**TABLE OF AUTHORITIES**

Cases

Cerrato v. San Francisco Cmty. Coll. Dist., 26 F.3d 968 (9th Cir. 1994)......................................................15

United States v. Dunson, No. 2:13-CR-060-APG-GWF, 2013 WL 1934944 (D. Nev. May 8, 2013).......................................15

United States v. Kouyoumdjian, 601 F. Supp. 1506 (C.D. Cal. 1985)....................................................14

United States v. Motamedi, 767 F.2d 1403 (9th Cir. 1985)...........12

United States v. Powers, 318 F. Supp. 2d 339 (W.D. Va. 2004).......12

United States v. White, 2018 WL 5291989 (N.D. Cal. Oct. 19, 2018)......................................................12

United States v. Winsor, 785 F.2d 755 (9th Cir. 1986)..............13

Statutes

18 U.S.C. § 3142(f)............................................10, 11

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Defendant Sean Schoepflin ("defendant") should remain detained pending trial because he cannot be trusted to comply with any conditions of release, poses a danger to the community, and presents a serious flight risk.  Defendant has been indicted for wire fraud and money laundering arising out of a scheme he carried out to fraudulently obtain hundreds of thousands of dollars from the Small Business Administration's ("SBA") Economic Injury Disaster Loan Program ("EIDL") -- a loan program designed to assist small businesses suffering from the effects of the COVID-19 pandemic.

In addition to his deceitful conduct, defendant is a danger to the community.  When the Federal Bureau of Investigation ("FBI") arrested defendant, they found in the closet of his apartment a plethora of weapons that defendant illegally possessed, given his felon status, and combat-ready equipment including: (1) nine firearms, including multiple AR-15 style assault rifles; (2) over 4,000 rounds of ammunition; and (3) various tactical gear, including bullet proof vests, gas masks, and helmets.  Furthermore, defendant has a history of failing to respond to court orders, to appear for court proceedings, and has an outstanding warrant for a failure to appear.

In his motion for reconsideration, defendant fails to address any of these facts, and instead seeks pretrial release based on two procedural arguments that are contrary to the plain language of the Bail Reform Act ("BRA") and binding Ninth Circuit precedent. Defendant's motion for reconsideration of bond should be denied.

5

## II. STATEMENT OF FACTS

On April 1, 2022, defendant was indicted for wire fraud and money laundering arising from a scheme he carried out in which he made numerous false statements to the SBA to obtain EIDL loans, including inflating his business's revenue and lying that he did not have any criminal history, despite his numerous prior felony convictions. (Dkt. 26.) Through his scheme, defendant attempted to obtain over $1 million, and successfully obtained over $150,000 in EIDL funds from the SBA.

Upon his arrest in in the instant case, the FBI discovered nine firearms inside the closet of his two-bedroom apartment shared with co-defendant Leon (as depicted in the photographs below).





These firearms included: (1) a Sig Sauer P238 pistol; (2) four Sig Sauer P320 pistols; (3) an H. Schmidt revolver; (4) two Sig Sauer M400 rifles; and (5) a Sig Sauer Cross Creedmoor rifle.  (Declaration of Solomon Kim, Ex. 1.)  In addition to these firearms, the FBI discovered approximately 4,120 rounds of various types of ammunition and multiple loaded firearm magazines.  (Id.)  Defendant also possessed a large amount of tactical equipment, including body armor, gas masks, and helmets (as depicted in photographs below).  (Id., Ex. 2.)





Based on a serious risk that defendant would flee, the Court held a detention hearing. (Dkt. 10.) At the conclusion of the hearing, the Court ordered defendant detained, finding that no condition or combination of conditions would reasonably assure the appearance of defendant and the safety of the community. (Id.)

On April 27, 2022, defendant moved for reconsideration of the Court's detention order, offering in support an unjustified affidavit of surety in the amount of $100,000 -- $50,000 to be signed by defendant and the other $50,000 to be signed by the mother of his daughter. (Dkt. 40.) At the hearing on defendant's motion, defendant argued for his immediate release based on two procedural arguments: (1) the Court should reverse its prior ruling that the government was entitled to an initial detention hearing because defendant can now offer a third-party surety who can mitigate against his flight risk; and (2) the Court cannot detain defendant based on danger alone when a detention hearing is warranted only due to defendant's serious risk of flight. (Dkts. 42, 44.) The Court deferred its ruling on defendant's motion pending further briefing by the parties on the aforementioned procedural arguments. (Dkt. 42.)

**III. ARGUMENT**

Both of defendant's procedural arguments fail because they are contrary to the plain language of the Bail Reform Act and binding Ninth Circuit case law.

    **A. No New Finding Under 18 U.S.C. § 3142(f) Is Required For A Renewed Detention Hearing**

Defendant's first argument is essentially as follows: when a detention hearing is reopened, even solely at defendant's request, due to the availability of bail resources, the government must

1 reestablish that a detention hearing is warranted under 18 U.S.C.
2 § 3142(f).  If it does not, defendant argues, the Court is prohibited
3 from even <u>considering</u> detaining defendant (<u>i.e.</u>, assessing danger and
4 flight for purposes of detention) and must release defendant
5 immediately.  (Dkt. 44 at 7.)

6     Defendant's argument fails for multiple reasons.  First, as
7 defendant himself concedes, defendant cannot point to a single case
8 in support of his position.  (<u>Id.</u> at 4-5.)

9     Second, the plain language of the BRA does not support such a
10 restrictive and narrow interpretation of the statute.  Rather, the
11 BRA makes it clear that whether a detention hearing should be held
12 under § 3142(f) is an issue that is decided at the time of
13 defendant's <u>first</u> initial appearance, not one that is revisited every
14 time the hearing is reopened when bail resources become available.
15 Section 3142(f) begins by stating that a court "shall hold a
16 [detention hearing]" if certain conditions are met, including a
17 showing (on the government's or court's own motion) that defendant is
18 a serious flight risk.  The section then goes on to state that, if
19 those conditions are met, "[t]he hearing shall be held <u>immediately</u>
20 upon the person's <u>first</u> initial appearance before the [court] . . .
21 ."  18 U.S.C § 3142(f) (emphases added).  No language in the BRA
22 mandates that the government (or the court) reestablish that a
23 detention hearing is warranted under § 3142(f) every time a defendant
24 requests to reopen the hearing based on the availability of new bail
25 resources.

26     In addition, contrary to defendant's suggestion, nothing in the
27 BRA mandates that the Court release defendant immediately without
28 even assessing detention if the government does not reestablish that

a detention hearing is warranted under § 3142(f). When a detention hearing is reopened, the BRA requires the court to consider a defendant's detention (based on danger and flight), regardless of whether the government (or the court) can establish that a detention hearing is warranted under § 3142(f). See 18 U.S.C. § 3142(f) ("The hearing may be reopened . . . [based on new information] that has a material bearing on the issue of [nonappearance and danger]."). In fact, as the plain language of the statute provides, the very purpose of reopening the hearing is so that the Court can reassess defendant's detention or bail (based on danger and flight). See id.

Defendant argues that because the BRA allows the detention hearing to be reopened "before . . . a determination [has been made] by the judicial officer," this somehow means that the government must reestablish that a hearing is warranted when the hearing is reopened by defendant. (Dkt. 44 at 8.) Nothing about the aforementioned language from the BRA calls for such a result. Rather, the meaning of the language is unremarkable and straightforward: a defendant may request to reopen a detention hearing, either before or after the court has decided the issue of defendant's pretrial detention. Defendant's first procedural argument should therefore be rejected.[1]

Even assuming the government (or the court) must reestablish that a detention hearing is warranted under § 3142(f) when a defendant reopens the hearing due to new bail resources becoming available, the government has set forth ample evidence demonstrating

---

[1] Defendant also attempts to make a distinction between a "predicate hearing" (regarding whether a detention hearing is warranted in the first place) and the actual "detention hearing." (Dkt. 44 at 7-8.) This distinction is nowhere to be found in the BRA.

11

that such a hearing is warranted based on defendant's serious risk of flight.

The threshold to trigger a detention hearing under § 3142(f) is very low. As one district court within the Ninth Circuit has observed, "[b]ecause of the immediacy with which the [detention] hearing should happen, the government or Court need only express their belief that the defendant poses a serious risk of flight for the hearing to commence." United States v. White, 2018 WL 5291989, at *4 (N.D. Cal. Oct. 19, 2018); see also United States v. Powers, 318 F. Supp. 2d 339, 341 (W.D. Va. 2004) (explaining that the standard to trigger a detention hearing occurs when the "United States or the court believes there is a serious risk of flight"). Moreover, because the standard of proof to detain a defendant on grounds of risk of non-appearance is by a preponderance of evidence, see United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985), it follows that the standard of proof to demonstrate the government's entitlement to a hearing based on flight risk must necessarily be lower than a preponderance. In sum, "the belief that entitles the government to the detention hearing is ultimately a very low threshold." White, 2018 WL 5291989, at *4.

Furthermore, triggering a detention hearing does not require an evidentiary hearing. The rules of evidence do not apply to detention hearings. 18 U.S.C. § 3142(f)(2) ("The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing."); Fed. R. Evid. 1101(d)(3) (rules of evidence do not apply to miscellaneous proceedings). The government may proceed in a detention hearing by

12

proffer or hearsay. United States v. Winsor, 785 F.2d 755, 756 (9th Cir. 1986).

Here, defendant poses a serious risk of flight. Defendant has a history of failures to appear. He failed to appear in court on March 15, 2019, in connection with a set of traffic violations. (Kim Decl., Ex. 3.) He again failed to appear in court on May 8, 2019, in connection with another set of traffic violations. (Id.) Defendant also currently has an outstanding misdemeanor warrant from July 2015 for once again failing to appear in court. (Id., Ex. 4.)

In addition, defendant has a history of failing to respond to court orders and correspondences. In connection with a federal employment lawsuit in which defendant was a named defendant, the Eastern District of Missouri outlined in an order the multiple failures by defendant to appear and respond to court orders. (Id., Ex. 5.) The court there noted that: (1) defendant failed to respond to four separate calls by the court to secure defendant's telephonic appearance for a default hearing; (2) defendant failed to appear for a mediation as ordered by the court; and (3) defendant failed to respond to two separate orders to show cause by the court, which ultimately resulted in a default judgment against defendant in the case. (Id. at 1-3.) This evidence demonstrating defendant's history of failures to appear is more than sufficient to meet the very low threshold required for a detention hearing.

### B. The Court May Detain On Danger Alone, But Does Not Have To Because Defendant Presents A Danger And Flight Risk

Defendant's second procedural argument -- that a defendant cannot be detained based on a finding of dangerousness alone when the

13

only basis for a detention hearing is that defendant is a serious risk of flight -- is likewise meritless.

The Ninth Circuit has held on several occasions that a court may detain a defendant based on dangerousness alone. In United States v. Motamedi, the circuit expressly stated that the BRA "permits the pretrial detention of a defendant without bail where it is demonstrated either that there is a risk of flight or no assurance that release is consistent with the safety of another person or the community." 767 F.2d 1403, 1406 (9th Cir. 1985) (emphases added). Later, the Ninth Circuit affirmed the constitutionality of pretrial detention based on dangerousness alone in United States v. Walker, 808 F.2d 1309, 1311 (9th Cir. 1986); see also United States v. Kouyoumdjian, 601 F. Supp. 1506, 1509 (C.D. Cal. 1985) ("[F]or the defendant to gain conditional release, the judicial officer must be satisfied that both the defendant's appearance and the community's safety are assured" (emphases in original).). Defendant fails to cite any binding authority holding that the court's statutory ability to detain a defendant based on danger alone somehow disappears when a detention hearing is warranted based on defendant's serious risk of flight alone.

Defendant's citation to Twine is misplaced. In a single sentence, the Ninth Circuit in Twine stated, "[w]e are not persuaded that the Bail Reform Act authorizes pretrial detention without bail based solely on a finding of dangerousness. This interpretation of the act would render meaningless 18 U.S.C. § 3142(f)(1) and (2)." 344 F.3d 987, 987 (9th Cir. 2003). Given Twine's exclusive focus on the BRA's sections concerning when detention hearings are appropriate in reaching its conclusion, Twine stands for the correct (and

14

unremarkable) proposition that a defendant cannot be detained based on danger unless a detention hearing is warranted in the first place pursuant to § 3142(f).  Twine did not overrule the circuit's prior decisions in Motamedi and Walker -- something only an en banc panel can do.  Cerrato v. San Francisco Cmty. Coll. Dist., 26 F.3d 968, 972 n.15 (9th Cir. 1994).  Defendant can and should therefore be detained based on his danger to the community.

Even assuming the Court cannot detain defendant based on danger alone in this case, detention is still warranted because, as the government has argued from the outset, defendant presents both a danger and risk of nonappearance.  As described above, defendant possessed numerous firearms, over 4,000 rounds of ammunition (many of which were loaded in firearm magazines), and various combat-ready gear, including body armor, gas masks, and helmets, all within the confines of his two-bedroom apartment, shared with codefendant Leon.  Defendant also has a history of violence, including a 1998 burglary conviction, a 1998 burglary and larceny conviction, and another 1998 burglary conviction.  (March 18, 2022 Pretrial Services Report).  In addition, defendant has been arrested multiple times in connection with violent conduct, including a 2004 arrest for disorderly conduct, a 2007 arrest for aggravated assault with a deadly weapon, a 2012 arrest for disorderly conduct, and a 2017 arrest for assault, battery, and disorderly conduct.  (Id.); see United States v. Dunson, No. 2:13-CR-060-APG-GWF, 2013 WL 1934944, at *3 (D. Nev. May 8, 2013) (detaining defendant based, in part, on his history and characteristics under § 3142(g)(3), which included multiple arrests for narcotics); United States v. Burgos, No. 2:11-CR-48-JCM-LRL, 2011 WL 867567, at *3 (D. Nev. Mar. 10, 2011) (same based, in part, on

prior arrests for drug trafficking and possession).  Given defendant's serious danger and risk of nonappearance, defendant's proffered unjustified bond of $100,000 is insufficient to warrant defendant's release.

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court deny defendant's motion for reconsideration of detention.